Bobby Campbell

*v.*

State of Tennessee.

384 S.W.2d 4.

*(Knoxville,* September Term, 1964.)

Opinion filed November 12, 1964.

R. D. Field, Greeneville, for plaintiff in error.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Campbell was convicted of burglary and sentenced to serve four years in the penitentiary under this indictment. At the same time the burglary indictment was tried, he was tried and convicted of larceny under an-

other indictment and sentenced to serve two years in the State penitentiary. The sentences were ordered to run concurrently.

Numerous assignments of error have been made, but since, after thoroughly considering this record and authorities, we have concluded the case must be reversed, we will not consider these assignments seriatim, but will proceed to the assignment and the error we feel is fatal to this judgment.

The assignment that must be sustained is that the trial judge committed error in permitting in evidence an extrajudicial statement made by Campbell amounting to a confession, because in taking this statement the officers did not comply with the Constitution of Tennessee nor with that of the United States on the question of self-incrimination.

A business house in Greeneville was broken into on October 12, 1963, at about midnight. Several items of property were taken. Another business house was likewise broken into on the same night, or at least the police were informed of it while investigating the previous burglary and a small amount of cash was taken in this latter burglary.

A number of articles with the name of the concern that had been burglarized were found in the home of the grandmother of Bobby Campbell on October 12. Bobby, his brother and another person were found about a quarter of a mile from the grandmother's home sitting in a car about 5:00 or 5:30 a. m. on the morning of October 12. Bobby was drunk when he was arrested and locked up. Later the officers went back to the grandmother's home and found hidden there several other items of

property taken from the place that had been burglarized including a Notary's seal of an employee of this concern.

Campbell testified in his own behalf and he denied breaking into either of the places; he also testified that he had been at his aunt's home about 9:00 o'clock on the night in question and said he could remember nothing that he did between 10:00 o'clock on that night until about 1:00 o'clock the following morning because of being drunk. He also testified that he was placed in a dungeon in jail which was dirty and cold, and the only way he could drink his coffee was to bend a tobacco can and drink from this. He likewise said that he told the Chief of Police that he had committed these crimes because he was afraid of the Chief of Police, the Chief of Police having whipped him once or twice before.

It was shown in the record that the present counsel for Campbell went to the police station on Monday following this arrest on Sunday morning and requested to see Bobby Campbell, but on the first two occasions he was denied permission to see him, and then, when he went back the third time, the Chief of Police told him that he, the Chief of Police, would like to talk to Campbell first and to give him thirty minutes to do it and then the attorney could see him. This request by the Chief of Police to the attorney was granted by the attorney. It was during this thirty minute period while the Chief of Police talked to Campbell that the alleged confession was made. In this confession the defendant told how he broke into both places, which was corroborated by different officers, showing that a window had been broken and he entered through it and the use of a type of iron bar to pry open the machine where some money was taken, and by an employee of one of the companies who stated

he found a small piece of metal which indicated that it had come from the breaking of the machine, etc.

If the confession of this boy is admitted, it, along with the corroborating evidence, is sufficient for a conviction. The confession is supported by adequate corroborative evidence. If the confession is admissible the case cannot be reversed on its facts since the jury has resolved the conflicts of the testimony in favor of the State. *Hargrove v. State,* 199 Tenn. 25, 281 S.W.2d 692.

The Attorney General frankly admits that the question of whether or not this confession should have been submitted is a serious one, and, in effect, from the whole tenor of his brief feels that it warrants reversal. One of the officers on this question testifies: ''I believe that the Chief told him that if he wanted to tell the truth that when the case came up, naturally we'd tell the Attorney General if he made the statement, that he made the statement and that he cooperated, if he cooperated, or just what he done, but as far as any promises I don't know if we promised him anything.'' This same officer on cross-examination admitted that in the preliminary hearing of the cause that he did tell the defendant it would certainly be to his, the defendant's, favor if he wanted to cooperate with the officers by talking about the two places burglarized.

The City Attorney who was present at the time the confession was made had this to say:

''There were no promises as such, the Chief didn't say, if you confess to this you will get three years instead of five. He did say this, the Court, the officers, and everybody else will treat you better if you confess than if we have to go through the rigamarole of in-

vestigation, it was a lot more detailed than that, but the gist of the thing was, it wasn't a promise of acquittal or letting him off, it was just that people would look toward him with a better view if he would confess.''

In the outset hereof we referred to the fact that this defendant, Campbell, testified that he gave this statement to the Chief of Police because he was afraid of him; that he had been whipped three or four times before by him. The Chief of Police did not deny these statements of the defendant, but says that the confession was voluntarily given. There is no claim anywhere in this record that this boy was advised of his constitutional rights to remain silent, or that he was warned that his answers might be used against him, or about his rights respecting a consultation with an attorney. The fact of the business is his attorney was refused the right to see him on two occasions on the morning of the day after the arrest and on the third occasion was only allowed to see this defendant after the Chief of Police had talked to him some thirty minutes and elicited this confession.

When the officers testified as to what this boy had told them, and this was objected to, the counsel for the defendant was allowed to cross-examine those testifying and, after he had done so, he asked permission of the court to put on other witnesses on the question of whether or not the confession was properly given. The court refused this and said he was satisfied that the confession was voluntarily made, and that he would hear the other witnesses when he came to them, or something to that effect. Apparently though there were no additional witnesses called by the defendant to show that the confession was made involuntarily or because of a promise. The

State thinks, since no additional witnesses were called after counsel had been refused by the court to call other witnesses on the point at the time, that under *Woodruff v. State,* 164 Tenn. 530, 51 S.W.2d 843, this is not harmful error. The Court there under the circumstances of that case held that it was not error for the trial judge to refuse a hearing on the question. The circumstances in that case were that the trial judge offered to grant such a hearing at the close of the State's proof and counsel for the defendant presented no evidence. Under such circumstances it was held by this Court in the Woodruff case that this was not error.

■■ The admissibility of a confession in this State is not a matter for submission to the jury. It has long been the rule in Tennessee that:

"When confessions are offered as evidence, their competency becomes a preliminary question, to be determined by the court. This imposes upon the presiding judge the duty of deciding the fact whether the party making the confession was influenced by hope or fear. This rule is so well established, that if the judge allow the jury to determine the preliminary fact, it is error, for which the judgment will be reversed: *Boyd v. The State,* 2 Humph. 39. These are elementary principles too long established and followed to be now questioned." *Self v. State,* 65 Tenn. 244, at page 253.

This decision has been followed many, many times since. See particularly *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332, an excellent opinion by Chief Justice Green. Of course, after a confession has been admitted, that is when the trial judge has heard proof pro and con as to whether or not it was voluntary, involuntary, forced or given by reason of promises, etc., it is up to the trial

judge to exercise his judgment on these matters, and, when he has done so, the weight of the confession is a matter for the jury. In other words, it is up to the jury to determine whether the defendant made the confession, and whether the statements made in it are true or not, and to aid them in resolving these questions the jury may hear evidence of the circumstances under which the confession was procured.

██ In the first instance here we have the trial judge refusing to hear, after the confession is admitted, other evidence as to whether or not this confession was voluntary or involuntary. That in itself is slightly arbitrary for a trial judge to pre-emptorily cut off counsel without giving him the opportunity at that time to offer other evidence before the matter is passed on. The trial judge in colloquy between himself and counsel for the defendant at one point, after an objection had been made to this oral confession, among other things said: "* * * and this court is not going to be bound by what the Federal courts have said about it." Of cours, a statement of this kind is rather unfortunate in a record, and should not have been made, because all of us know that in taking the oath of office to act as a judge we take the oath to abide by the Constitution of the United States as well as the Constitution of the State of Tennessee. We likewise know that the Constitution of the United States is superior in that when those acting under the Constitution of the United States, as the Supreme Court of the United States does on such a question, then we of the State courts are bound thereby. Thus it is, the Supreme Court of the United States has passed on questions as here presented and their decision on such questions is mandatory on us. It is obligatory on all State judges to follow such a directive.

In *Haynes* v. *State of Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, 1963 Term, the Supreme Court of the United States held that a confession, very much like the one herein, where the man asked prior to the indictment to call his attorney and to call his wife and was denied this privilege, was inadmissible as this was a denial of due process of law. U.S.C.A., Constitution Amendment 14. In the Haynes case, Haynes was kept incommunicado while efforts were still being made to secure his signature to a confession. He confessed to one thing but when they attempted to get a second confession signed he refused to do it. The Supreme Court of the United States reversed the conviction in this case and among other things adopted a statement from another Supreme Court case, to-wit:

"* * * 'the question in each case is whether the defendant's will was overborne at the time he confessed,' *Lynumn* v. *Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 [926]. 'In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort.' (Citing authority). And, of course, whether the .confession was obtained by coercion or improper inducement can be determined only by an examination of all the attendant circumstances."

In that case the jury in the State of Washington had passed on the question of whether or not the confession was voluntary which is contrary to the practice in this State, as above set forth. The Court in the Haynes case in conclusion said this:

"In reaching the conclusion which we do, we are not unmindful of substantial independent evidence tending to demonstrate the guilt of the petitioner. As was said

in *Rogers v. Richmond,* 365 U.S. 534, 541, 81 S.Ct. 735, 740, 5 L.Ed.2d 760 [766]:

" 'Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent, corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement.' "

As said above the law as set forth in the Haynes case is likewise the law that governs us.

In *Escobedo v. State of Illinois,* decided by the Supreme Court of the United States, on June 22, 1964, as is reported in 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, that Court again held that the right of accused to counsel does not depend upon whether at the time of the interrogation the authorities have secured a formal indictment or not, and the court in the course of its opinion among other things said:

"The interrogation here was conducted before petitioner was formally indicted. But in the context of this case, that fact should make no difference. When petitioner requested, and was denied, an opportunity to consult with his lawyer, the investigation had ceased to be a general investigation of 'an unsolved crime.' *Spano v. New York,* 360 U.S. 315, 327, 79 S.Ct. 1202, 1209 [3 L.Ed.2d 1265] * * *. Petitioner had become the accused, and the purpose of the interrogation was to 'get him' to confess his guilt despite his constitutional right not to do so. At the time of his arrest and

throughout the course of the interrogation, the police told petitioner that they had convincing evidence that he had fired the fatal shots. Without informing him of his absolute right to remain silent in the face of this accusation, the police urged him to make a statement.''

This statement very closely fits the statement in the instant case of Campbell, and the factual situation as shown in this record could almost be a paraphrase of the Supreme Court of the United States case just quoted from.

The United States Court then again said in *Escobedo v. Illinois,* supra:

''We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment.' *Gideon v. Wainwright,* 327 U.S. [335], at 342, 83 S.Ct. [792], at 795 [9 L.Ed.2d 799], and no statement elicited by the police during the interrogation may be used against him at a criminal trial.''

■ In reading the authorities on confessions one might, without giving it any particular serious thought, get the idea that the confession must be in writing before

it is objected to or before evidence is heard pro and con as to the admissibility of this confession. This is incorrect, because an oral confession is just as binding as a written confession. A written confession is of no higher evidential value than an oral confession, although, of course, it is natural for human beings to give a written signed confession more weight and credit than they do to hearing the voice of certain witnesses say that the man confessed to them so and so, but insofar as the question of the admission of confessions the same rule should apply to an oral confession as to a written confession. See Wharton's Criminal Evidence, Vol. 2, 12th Ed., sec. 339, page 16, et seq.

After having given this matter very careful consideration, we are forced to hold under the authorities herein cited that the confession here attempted to be offered was improperly secured and consequently cannot and should not be admitted in evidence. As a result of this holding this case must be reversed and remanded to the trial court.