**STATE of Tennessee, Appellant,**

v.

**David Wayne NEAL, Appellee.**

Supreme Court of Tennessee,
at Nashville.

April 8, 1991.

Charles W. Burson, Atty. Gen. and Reporter, Kymberly Lynne Anne Hattaway, Asst. Atty. Gen., Nashville, for appellant.

Michele D. Collins, Woods & Woods, Nashville, for appellee.

## OPINION

WILLIAM S. RUSSELL, Special Justice.

This appeal presents the issue of whether or not the failure of a trial judge to articulate to a guilty-pleading defendant the full litany of rights mandated to be given in such a proceeding *ipso facto* renders a resulting judgment of conviction void; and, if not, what test of validity is applied. We hold that such a judgment is not necessarily void, and is subject to scrutiny under the harmless error doctrine, to ascertain whether or not the guilty plea was in fact voluntary and made with adequate knowledge by the accused of the rights being given up as well as knowledge of the results regarding possible future enhanced punishment flowing from the guilty plea.

## HISTORY OF THE CASE

In the instant case David Wayne Neal on March 2, 1977, entered a plea of guilty to the crime of attempting to commit a felony, to wit: passing a forged paper. He was sentenced to one to three years, the sentence suspended, and a term of eighteen months probation set.

During the guilty plea submission hearing, the trial judge personally addressed Neal and ascertained that the defendant understood that, by pleading guilty, he was waiving his constitutional right to have his case tried by a jury of his peers. The trial judge also asked Neal whether or not he understood and accepted the plea bargain offered by the State's attorney, and received an affirmative response. The judge asked Neal's attorney, in Neal's presence in open court, whether Neal waived his right to confront the witnesses against him. No other rights were explained to Neal by the Court prior to the acceptance of the guilty plea.

On June 1, 1988, Neal filed a petition for post-conviction relief alleging that his March 2, 1977, guilty plea was not intelligently and voluntarily entered. Specifically, he alleged that the plea was made "with no knowledge of his rights secured to him by the U.S. Constitution" and with no knowledge that his plea effectively waived those rights. He also alleged that had he "known that his guilty plea could be used against him in a future Habitual proceeding, he would never have plead guilty".

The trial court conducted a hearing on Neal's post-conviction petition on November 23, 1988, and found the petition to be without merit and dismissed it. Neal had testified upon the hearing that he knew, at the time that he entered his plea, of his right to a jury trial, his right to counsel at that trial, his right to confront his accusers, his right to present evidence on his own

behalf, and his right against self-incrimination.

Neal appealed the dismissal of his post-conviction petition to the Court of Criminal Appeals, and there the judgment of the trial court was reversed. In its opinion, the Court of Criminal Appeals recognized that Neal's guilty plea appeared to have been voluntarily entered. The court also recognized, however, that the plea was not accepted in strict compliance with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977). Because this court ruled in *Rounsaville v. Evatt*, 733 S.W.2d 506 (Tenn.1987), that strict compliance with the *Mackey* opinion was required in order to validate a guilty plea, the Court of Criminal Appeals held Neal's 1977 guilty plea void and remanded the case to the trial court for further proceedings.

### REQUIRED RIGHTS ADVICE PRIOR TO ACCEPTING GUILTY PLEAS

■ Since the release of this Court's opinion in *State v. Mackey, supra,* the lower courts of this State have struggled to comprehend the exact requirements of that case and to determine how those requirements should be applied. In this opinion we seek to give additional direction to guide the actions and decisions of trial and appellate courts in addressing *Mackey* issues. Here, the Court of Criminal Appeals followed the language of *Rounsaville, supra,* which opinion seems to require strict compliance with the advice litany. However, in *State v. Frazier*, 784 S.W.2d 927 (Tenn.1990), this court held that *Boykin* violations are subject to substantial compliance and harmless error scrutiny; citing *State v. Newsome*, 778 S.W.2d 34 (Tenn. 1989), wherein we held that any deviations from *Mackey* are subject to harmless error review on direct appeal from the entry of a guilty plea.

In *Rounsaville, supra,* decided in 1987, relief was sought in a post-conviction proceeding from nine guilty plea judgments entered upon the same occasion. The accused had signed a petition to be allowed to plead guilty wherein he represented that he had been advised of various constitutional rights, and his attorney signed a certificate to the petition indicating his belief that the statements in the petition were true and accurate. The petition contained no reference to the constitutional right against self-incrimination, nor did it contain the *Mackey* mandated information that evidence of prior convictions could be admitted for consideration by the judge in determining punishment. The trial judge conducted a brief interrogation of the defendant wherein he established that Rounsaville was 23 years old, had a 12th grade education, was a cement mason, could read and write, and had read the petition that he had signed. The court asked if he wanted to give up a jury trial and if he was guilty and wanted to plead guilty, and if he was satisfied with the work of his appointed attorney. After receiving affirmative responses, the pleas were accepted. This court held that the trial judge's failure to address defendant personally in open court and inform him of the constitutional privilege against self-incrimination and ascertain that he fully understood the significance of his waiver of that right was an error of constitutional proportion and required that the guilty pleas and convictions thereon be set aside as void.

In *Rounsaville* this court did not directly address the concept of harmless constitutional error. The Court of Criminal Appeals had, in upholding the judgments of conviction, noted that the defendant was no stranger to criminal proceedings, implying that Rounsaville knew of his constitutional right against self-incrimination. Whether he did or not was apparently not directly developed.

In the case at bar we depart from the strict holding of *Rounsaville.* We do not depart from the requirement of the full litany of information that is required to be communicated. Failure to do so, however, merely renders the related judgment voidable rather than void; and in such a case, the appropriate harmless error test shall be applied. If we were deciding *Rounsaville* today, we would agree that error of constitutional dimension had occurred; but rath-

er than declaring the judgments to be void, we would remand the case for a determination of whether or not the error was harmless beyond a reasonable doubt.

We wish to emphasize the importance and mandatory status of the advice to be given to the defendant prior to the acceptance of a guilty plea. The prescribed litany has its origin in part in federal constitutional law as pronounced by the federal Supreme Court, in part in state constitutional law as stated by this court, in part in the Tennessee Rules of Criminal Procedure (Rule 11), and in part by the pronouncements of this court in exercising this court's supervisory authority. The common and compelling purpose behind all of these rules is to seek to insulate guilty pleas from coercion and relevant defendant ignorance. They are designed to insure that guilty pleas are voluntary and knowing.

No comparable litany of advice is required to be given to a defendant pleading not guilty and standing trial. Any judgment of conviction resulting from such a trial is not void or voidable because of the absence of the litany of advice. By focusing upon this, we bring into proper perspective the purposes behind the requirements of the advice. The defendant is tentatively offering to plead guilty. For the plea to be acceptable it must be voluntary. That does not mean that the defendant would want to plead guilty if he or she had the option available to go free. The option available is to go to trial, with its uncertainties, or to plead guilty. The knowledge that is most relevant to this decision of the accused pertains to the rights that are available to him or her upon a trial that are given up by pleading guilty.

While the origin of many of these mandates regarding advice are not the direct product of constitutional rights interpretations, unlike the *Boykin* rule hereinafter set out, and may simply owe their genesis to a rule of criminal procedure (Rule 11, Tenn.R.Crim.P.) or a supervisory pronouncement of this court, all should be treated with the respect due constitutional rights because any rule of criminal proce-

dure can take on the status of a constitutional right if the denial of its protection results in the denial of the Fourteenth Amendment rights of equal protection or due process. For example, the right to the assistance of competent counsel is a due process constitutional right with its genesis in the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. Failure of defense counsel to insist upon a defendant's receiving the advice required by Rule 11 could in some cases be a deprivation of the constitutional due process right to effective assistance of counsel. While we have said that a violation of the advice litany not required by *Boykin* does not have the status of a constitutional rights violation, *State v. Prince*, 781 S.W.2d 846 (Tenn.1989), this applies only where the allegation is not linked to the alleged denial of a specified constitutional right.

*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), holds that if a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and is therefore void. The court said that it could not presume a waiver of three important federal constitutional rights from a silent record, to wit:

1. The privilege against compulsory self-incrimination guaranteed by the Fifth Amendment.
2. The right to trial by jury.
3. The right to confront one's accusers.

This court, in *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), in the exercise of its supervisory power, expressly expanded the advice requirements of *Boykin*. A considerable part of this advice is constitutionally rooted. This court mandated the following procedure:

A. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penal-

ty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and

(2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and

(3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and

(5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

B. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

C. Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

D. A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty, the record shall include, without limitation, (a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea.

In *State v. McClintock,* 732 S.W.2d 268, 273 (Tenn.1987), this court pronounced the additional advice requirement that it must be made clear to the guilty-pleading defendant that the resulting judgment of conviction may be used in a subsequent proceeding to enhance the punishment for subsequent offenses. *See also State v. Prince,* 781 S.W.2d 846, 852 (Tenn.1989); *State v. Newsome,* 778 S.W.2d 34, 37 (Tenn.1989). This additional guilty plea requirement first enunciated in *McClintock* assists the courts in ensuring that the defendant is aware of all consequences of a guilty plea and that the plea is, therefore, intelligently and voluntarily entered. This requirement had not been pronounced at the time of Neal's guilty plea in this case. The *McClintock* advice requirement was particularly appropriate in 1987 when it was first mandated, because at that time, and for many years before, a felon could be incarcerated for life, without possibility of parole, if he or she had as many as three prior designated felonies, under the Habitual Criminal Act. T.C.A. Sections 39–1–801, 39–1–806; repealed Acts 1989, ch. 591, Section 1. The present sentencing law is not nearly so severe. See T.C.A. Sections 40–35–105, 40–35–107, 40–35–108. Most people would assume that the punishment for a subsequent offense would be enhanced by a prior criminal record.

The pertinent parts of Rule 11, Tenn.R. Crim.P. are as follows:

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant per-

sonally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or his attorney.

\* \* \* \* \* \*

(e)(3) *Acceptance of a Plea Agreement.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

\* \* \* \* \* \*

(f) *Determining Accuracy of Plea.* Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) *Record of Proceedings.* A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

(The effective date of the rules of Criminal Procedure is July 13, 1978; which is over a year subsequent to the entry of Neal's plea in this case.)

We have reviewed and compiled into this opinion the current requirements regarding required advice to defendants offering to plead guilty. We urge trial courts to follow these mandates, as it is their clear duty to do. See *Rounsaville v. Evatt,* 733 S.W.2d 506, 508 (Tenn.1987). *See also,* Canon 3 A(1) of the Code of Judicial Conduct, as contained in Rule 10, Supreme Court Rules.

## APPELLATE REVIEW OF VIOLATIONS

■ It is obvious from this review of the requirements of *Boykin, Mackey, McClin-*tock and Rule 11, Tenn.R.Crim.P. that there is much duplication. It is also apparent that the *Boykin* requirements are grounded upon federal constitutional law, that *Mackey* procedure and advice is based upon both constitutional and supervisory authority requirements, that Rule 11 also has a mixed genesis, and that *McClintock* pronounces a supervisory authority mandate. Whether a particular subject of advice rises to the level of being constitutionally required is important if it is omitted from the litany, because the procedures available to correct constitutional errors in the conviction process do not stop with direct appeal but also where not waived and timely filed include post-conviction petitions. Non-constitutional error cannot be addressed under the Post–Conviction Procedure Act. T.C.A. Section 40–30–105. Further the applicable harmless error rule differs, as will be pointed out hereinafter.

While we have alluded to review of *Boykin* violations as being "subject to substantial compliance and harmless error scrutiny" in *State v. Frazier, supra,* we did not mean to adopt a substantial compliance doctrine that would be anything less than full compliance with the heretofore set out requirements. While absolutely literal compliance with the advice to be given is not required, expressing the sense of the substance of the required advice to a guilty-pleading defendant is. That would be substantial compliance.

■ To further explain substantial compliance, we cite these examples. If the required advice has been correctly given by defendant's counsel, in open court in the presence of the defendant and same appears of record, that is substantial compliance, although the trial judge did not repeat the same advice. It is substantial compliance if the sense of the rights and information set out in the litany is completely stated to the guilty-pleading defendant, on the record, even though the trial judge does not use the exact script suggested. It is substantial compliance if the entire litany of rights and other required explanatory information is communicated

in open court simultaneously to multiple defendants in the presence of their respective attorneys, so long as the number involved is not so great as to make individual understanding unlikely; and provided that each defendant is addressed individually to establish on the record the understanding and agreement of each defendant.

■ Substantial compliance is not error. Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly.

■ In the context of patent omissions from the advice litany, the test which this court approves is the appropriate harmless error test. *See, State v. Newsome,* 778 S.W.2d 34 (Tenn.1989). Its validity and reasonableness could not be better illustrated than it is in this case at bar. Clearly Neal was not expressly advised of all of his rights as required by *Boykin,* but he testified upon the hearing upon his post-conviction petition that he knew those constitutional rights. Since the purpose of the litany of rights is to insure that the defendant is aware of them when he or she gives them up, no possible harm to Neal is demonstrated.

■ He complains of not having been advised that the resulting judgment of conviction could be used in a subsequent proceeding to enhance the punishment for subsequent offenses, and testified that he was unfamiliar with the provisions of the Habitual Criminal Act, previously found in T.C.A. Sections 39–1–801, et seq. However, this advice was not required by mandate of this court per *McClintock* until ten years after his guilty plea; and, not constituting a per se constitutional rights violation, was inappropriate to be addressed in a post-conviction proceeding. *State v. Prince, supra;* T.C.A. Section 40–30–105.

Regarding the approval of a harmless error test for constitutional error, in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that errors of constitutional dimension do not necessarily require reversal of a criminal conviction on the principal that an otherwise valid conviction should not be set aside if the reviewing court determines that the constitutional error was harmless beyond a reasonable doubt in light of the entire record.

In subsequent cases, the United States Supreme Court has applied a harmless error or prejudice standard to numerous violations of constitutional rights. *See Deleware v. VanArsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (failure to permit cross-examination of a witness regarding bias); *Rushen v. Spain,* 464 U.S. 114, 118, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983) (denial of the right to be present at trial); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (unconstitutional burden-shifting jury instructions on element of malice).

Some constitutional violations require that the defendant establish that he was actually prejudiced by the error in order to obtain relief. For example, a defendant who attacks his guilty plea on the basis of ineffective assistance of counsel must show that he was actually prejudiced by his attorney's performance; that but for the counsel's ineffectiveness the guilty plea would not have been agreed to. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

This court dealt with errors arising out of the non-constitutionally grounded omission by the trial court to give all of the *Mackey* instructions in *State v. Newsome, supra.* In that case we expressly approved the application to such errors of the harmless error rules set out in T.R.A.P. 36(b) and Rule 52(a) Tenn.R.Crim.P. In addressing violations of the required litany not rising to the level of constitutional rights deprivations the test is not as strict as the *Chapman* requirement of finding the error to be harmless beyond a reasonable doubt.

Rule 52(a) Tenn.R.Crim.P. defines harmless error as follows:

"(a) *Harmless Error.* No judgment of conviction shall be reversed on appeal except for errors which affirmatively ap-

pear to have affected the result of the trial on the merits."

Rule 36(b) T.R.A.P. provides:

"(b) *Effect of Error.* A final judgment from which relief is available or otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."

■ These rules have the effect of requiring the complaining party to establish that the error caused prejudice which "affirmatively" appears; and is apparent from "considering the whole record" that the error "more probably than not affected the judgment". In other words, in a criminal case non-constitutional error must be shown by the defendant to have probably affected the judgment before reversal is appropriate.

■ It is clear from this review and compilation of the required guilty plea procedure that cases will arise, just like the one *sub judice,* wherein omissions of both kinds will be present. Whether the omissions are of one category or the other, or both, they must be addressed individually according to their constitutional or non-constitutional origin.

■ Omissions from the required dialogue are error. There is not an omission where there has been substantial compliance, as we have defined substantial compliance. An omission that is constitutionally mandated is subject to appellate review on direct appeal; and, if not waived by failure to raise it sooner, or barred by the three year statute of limitations set out in T.C.A. Section 40–30–102, may become the basis of a petition for post-conviction relief. Omissions of a part or parts of the advices and questions that are required only because this court, by rule or appellate decision exercising the court's supervisory duty and authority, has required it to be said to or asked of the guilty-pleading defendant, may be reviewed only upon direct appeal.

■ If the error is raised on direct appeal, and the record does not affirmatively show at a minimum substantial compliance with the dialogue requirements, the burden is upon the State to demonstrate that the error is harmless, under the appropriate harmless error rule as heretofore set out. If the State does not carry this burden, then the judgment must be set aside.

■ Obviously, there are many scenarios in which the error would be harmless. If it can be shown that the defendant already knew what he was not advised, as is true in the case at bar, the harmless nature of the error is classic. If the defendant was previously tried on the same charge, and experienced the exercise of his or her rights, and after a mistrial and before a second trial entered a plea of guilty and was not advised of rights in the case which rights he or she had already experienced, the error would obviously be harmless under any standard. If a sworn petition to be allowed to plead guilty is filed by the defendant, setting out the fact of the defendant's knowledge of all of the facts required to be covered by the judge in the required dialogue, and there is evidence that he in fact was aware of the truth of the allegations of the petition from the testimony of an attorney or attorneys or other learned person who advised with him in complete detail regarding the contents of the petition, and the defendant testified on the record that he understood the contents of the petition that he had filed, when and if this is found by the court to be true then the error in not articulating the full required rights information and conviction consequences could be found to be harmless.

■ In a case where the erroneous omission is the basis for relief under a post-conviction petition, the defendant-petitioner must allege and prove the omission, and that but for the omission the guilty plea would not have been entered. If this thesis is established *prima facie,* then the burden shifts to the State to justify the error by establishing through extrinsic evidence the defendant's knowing and voluntary relinquishment of the involved constitutional protections, despite the erroneous omission. If the State can demonstrate

that the error was harmless beyond a reasonable doubt, then the judgment stands. If a reasonable doubt exists at the close of the proof, then the judgment must be set aside. *See Dunn v. Simmons,* 877 F.2nd 1275, 1279 (6th Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990).

## SUMMARY

The voluntary and knowing mental state elements of the guilty pleading defendant are essential to the validity of a guilty plea judgment. The full scope of advice set out in *Boykin, Mackey, McClintock* and Rule 11, Tenn.R.Crim.P. should in substance be given. In the event of an omission of advice that is constitutionally mandated, relief may be obtained on direct appeal; or, if the plaint has not been waived and relief is timely filed for, upon a post-conviction petition proceeding. Where the omission of advice is simply the failure to conform to a rule or supervisory pronouncement of this court, and does not involve a constitutional rights deprivation, review and relief must be obtained by direct appeal following entry of the judgment.

If the omission of advice constitutes constitutional error, the judgment is void unless the error is harmless beyond a reasonable doubt. If the omission of advice does not rise to the level of constitutional error, the judgment will be voided only if the defendant can show prejudice from the omission.

The judgment of the Court of Criminal Appeals is reversed and the judgment of dismissal of the trial court is reinstated.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.