IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2001

## TERRANCE B. BURNETT v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6484-A     Joseph H. Walker, III, Judge**

─────────────

**No. W2000-01954-CCA-R3-CD  - Filed June 4, 2001**

─────────────

The petitioner appeals the dismissal of his petition for post-conviction relief, arguing that it was error for the post-conviction court to dismiss his petition without holding an evidentiary hearing. The petitioner pled guilty to two counts of felony murder, two counts of attempted first degree murder, and one count of especially aggravated burglary. In a *pro se* petition for post-conviction relief, the petitioner alleged that his trial counsel induced him to plead guilty just prior to the start of trial by showing him a videotape of a television show chronicling the final hours of a death row inmate's life. After appointing counsel, the post-conviction court dismissed the petition without an evidentiary hearing, ruling that the petition failed to present a colorable claim for relief. Based upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which L. TERRY LAFFERTY, SR.J., joined. DAVID H. WELLES, J., Not Participating.

C. Michael Robbins, Memphis, Tennessee (on appeal); Gary F. Antrican, District Public Defender; and Shana McCoy-Johnson, Assistant District Public Defender (at trial and on appeal), for the appellant, Terrance B. Burnett.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, Terrance B. Burnett, appeals as of right from the post-conviction court's dismissal of his petition for post-conviction relief. The sole issue on appeal is whether the post-conviction court erred in dismissing the petition without holding an evidentiary hearing. We affirm the order of the post-conviction court.

## FACTS

On January 22, 1999, the petitioner pled guilty to two counts of felony murder, two counts of attempted first degree murder, and one count of especially aggravated burglary, and was sentenced to life in prison without the possibility of parole. On January 21, 2000, he filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, that his trial counsel induced him to plead guilty by showing him a videotape of the final hours in a death row inmate's life, and that trial counsel was unqualified to handle a death penalty case. On January 27, 2000, the post-conviction court entered an order appointing counsel and giving appointed counsel time to prepare an amended petition. Post-conviction counsel requested and was granted until March 20, 2000, to file an amended petition for post-conviction relief. On March 7, post-conviction counsel filed a motion requesting that a transcript be prepared of the petitioner's pleas of guilty. The post-conviction court granted this motion and, additionally, allowed post-conviction counsel until May 1, 2000, to file an amended petition for post-conviction relief. On May 11, 2000, the petitioner's counsel filed a notice that no amended petition would be filed. On July 31, 2000, the post-conviction court dismissed the petition without an evidentiary hearing, finding that the petition failed to allege facts sufficient to entitle the petitioner to relief.

In its order dismissing the petition, the post-conviction court stated that it had reviewed the transcript of the guilty plea hearing.[1] The court found that the petitioner was twenty-three years old at the time of the hearing, and that he had a high school education. The court further found that the petitioner had expressed satisfaction with the representation provided by his counsel, indicated that he was voluntarily pleading guilty after consultation with his counsel and with family, and stated that he understood what he was doing. The post-conviction court concluded that the petitioner had voluntarily, knowingly, and intelligently entered his pleas of guilty, and that his petition thus failed to demonstrate grounds upon which he would be entitled to relief from his convictions. The petitioner filed a timely notice of appeal to this court on August 8, 2000.

## ANALYSIS

The sole issue on appeal is whether the post-conviction court erred in dismissing the petition without holding an evidentiary hearing. The Post-Conviction Act of 1995 provides that a post-conviction court is required to dismiss a petition for post-conviction relief after a preliminary consideration of its merits if the facts alleged in the petition, taken as true, "fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined[.]" Tenn. Code Ann. § 40-30-206(f). The petitioner contends that he was entitled to an evidentiary hearing because he alleged sufficient facts that, if taken as true, would entitle him to post-conviction relief on the grounds that his guilty pleas were not knowingly, intelligently, and voluntarily entered.

---

[1] The transcript of the guilty plea hearing was not included in the record before this court.

The petitioner's *pro se* petition for post-conviction relief consists of a preprinted form, accompanied by a contemporaneously filed memorandum of law. In his memorandum of law,[2] the following is alleged:

> January 22, 1999, the last day before the trial, the defendant's counsel and mitigation specialist visited the defendant at the Lauderdale County, Tennessee jail with a TV and video cassette recorder machine and played a tape of the 20/20 special he recorded the night before January 22. It was a special of an inmate awaiting the Lethal Injection on Death Row. The show talked about the inmate [sic] last days, last hours, last meals, and last time with family.
>
> After 19 months of leading the defendant on, the defendant's defense team showed their true defense strategy, using coercion, terror, inducement, and subtle or blatant threats, they induced the defendant to plead guilty. So the plea was not willingly and intelligently made because of the method used to obtain it and so the plea is involuntary because it was unlawfully induced with an unqualified Death Penalty case counsel.

The post-conviction court denied the request for a hearing on the petition and subsequently entered the following order:[3]

> The court finds that on January 22, 1999, the petitioner entered a plea of guilty to felony first degree murder and received a sentence of life without parole, and a plea of guilty to attempted first degree murder and received a sentence of twenty years, concurrent.
>
> From an examination of the transcript of the court proceeding of the guilty plea, the petitioner indicated he was twenty-three years of age with a 12th grade education, and had reviewed the forms with his attorneys, D. Michael Dunavant, and William Dan Douglas, indicating he wanted to waive a trial by jury, and enter a plea of

---

[2]This memorandum was filed on the same day as the petition for post-conviction relief and, apparently, as a supplement to the petition. However, the petition, which is under oath, does not make reference to the memorandum, which is neither notarized nor signed.

[3]In assessing the sufficiency of the allegations of a post-conviction petition, the court must assume that the facts alleged are true and may not make an independent fact investigation, such as a review of the transcript of a guilty plea hearing. Charlton v. State, 987 S.W.2d 862, 865 (Tenn. Crim. App. 1998). Accordingly, in determining whether the petitioner was entitled to a hearing on his post-conviction petition, we consider only the allegations of the petitioner and not the findings of the post-conviction court as to the pleas of guilty.

guilty, and understood what he was doing. He further indicated that he had reviewed this with his family.

The court questioned the petitioner at length with regard to the representation that he received, the fact that his attorneys had adequate time to meet with him, that they had met with specialists, and with regard to the attorneys['] work on the defense of this case. Petitioner responded he was satisfied with what his attorney had done. The petitioner indicated no one forced him in entering his plea, and he agreed that it was a result of talks he had with his family and other individuals on his behalf. The court took into consideration the defendant's age, level of education, intelligence, understanding of his rights, and the desire to avoid a greater penalty. In this case the plea arrangement was reached upon the agreement of [the] state to withdraw a death penalty notice which had been filed. There had been discussions with the defense team, and a negotiated plea arrangement entered into. The court went over all of this with the petitioner.

At the time the death penalty notice was filed there were no death qualified attorneys in Lauderdale County. However after appointment, the attorneys attended a seminar and earned their CLE credits with regard to death penalty cases, prior to the trial date of petitioner's case. They consulted with a mitigation specialist that examined the petitioner, and agreed that taking the plea agreement offered by the state would be in the petitioner's best interest.

The court finds that petitioner was accurately informed by his attorneys, and knew what he was doing when he entered his plea.

A plea hearing is not a mere formality. State v. Neil, 810 S.W.2d 131. (Tenn. 1991). A plea hearing serves to insure that the defendant's [sic] understands his rights and the terms of his plea. The record reveals that the petitioner understood he was entering a plea of guilty, understood the sentence, was satisfied with the work done by his attorneys, and accepted the plea arrangement.

The court therefore finds that the petitioner could not have been prejudice[d] by any alleged deficiency of trial counsel. His ineffective assistance of counsel claim must fail.

The record demonstrates that neither the trial court nor defense counsel coerced the petitioner into pleading guilty. The entry of a

plea of guilty to avoid a death sentence or risk of greater punishment does not, standing alone, make a plea involuntary. Hicks v. State, 983 S.W.2d 240 (1998).

The court finds that the petitioner knowingly and voluntarily pleaded guilty, and that the allegations in the petition do not require a hearing.

It is therefore Ordered that the petition for post conviction relief is dismissed.

To comply with due process, a guilty plea must be voluntarily, knowingly, and understanding entered into by a defendant. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). "[I]n order to knowingly and voluntarily enter a plea, the plea cannot be . . . the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" State v. Wilson, 31 S.W.3d 189, 195 (Tenn. 2000) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712, 23 L. Ed. 2d at 279)).

In James Bryant Weston v. State, No. 03C01-9612-CR-00484, 1998 WL 133834 (Tenn. Crim. App. Mar. 25, 1998), the petitioner had sought relief from his guilty pleas, claiming that trial counsel had substantially misadvised him as to his parole eligibility date, and that if he had known the correct date, he would not have pled guilty. Additionally, he claimed:

The appellant alleges that his guilty pleas were involuntary because he was unduly influenced by his attorney to accept the plea bargain agreement. The appellant alleges that he told his attorney that he wanted to go to trial. He alleges that his attorney said that there was no way to fight the case; and that if the appellant did not take the plea, he would end up on death row. The appellant persisted on going to trial. The appellant alleges that his attorney had a death row inmate talk to the appellant about what life is like on death row. He also alleges that his attorney brought an African-American attorney from Nashville to talk to the appellant about how to stay off of death row and to encourage the appellant to take the plea agreement.

Id. at *1. The court determined that these allegations were sufficient to entitle the petitioner to an evidentiary hearing.

Here, the petitioner claims that in showing him a television show of an "inmate awaiting the Lethal Injection on Death Row," the defense team [counsel and mitigation specialist] "showed their true defense strategy, using coercion, terror, inducement, and subtle or blatant threats" and caused him to plead guilty. Thus, he concludes that his pleas were not "willingly and intelligently made" and, thus, involuntary.

Here, the petitioner has utilized the alleged fact that he was shown an excerpt from the television show to argue that his guilty pleas were involuntary. The petitioner makes only conclusory allegations as to his pleas of guilty but presents no facts which, taken as true, would cause his pleas to be unknowing and involuntary. The claim regarding the showing of the videotape "contains bare allegations of violations of constitutional rights and mere conclusions of law." Harris v. State, 996 S.W.2d 840, 842 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1999). Thus, it must fail. In making this determination, we consider only the allegations in the post-conviction petition and not the two affidavits filed subsequent to the notice of appeal which, although within the record, are not properly before this court. Upon the filing of the notice of appeal, the post-conviction court no longer had jurisdiction in this matter. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) ("The jurisdiction of the Court of Criminal Appeals attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction.") (citing State v. Peak, 823 S.W.2d 228, 229 (Tenn. Crim. App. 1991)). Tennessee Rule of Appellate Procedure 24(a) sets out what is contained in the record on appeal. Rule 24(g) explains the limited circumstances in which the record can be supplemented:

> Limit on Authority to Add or Subtract from the Record. - Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

Tenn. R. App. P. 24(g).

At the time the two affidavits were filed, the post-conviction court no longer had jurisdiction in the matter and the affidavits could not come into the record pursuant to Rule 24(g) because they were not considered by the post-conviction court and not necessary to provide a "fair, accurate and complete account of what transpired" in the post-conviction court. Thus, these affidavits are not properly in the appellate record and cannot be considered by this court.

Even if the petitioner's allegations in this regard are taken as true, he is not entitled to relief. Accordingly, we affirm the order of the post-conviction court dismissing the petition without a hearing.

_____
ALAN E. GLENN, JUDGE