# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. BRUCE C. RELIFORD

### Direct Appeal from the Criminal Court for Shelby County
### Nos. 93-06433, -34, -37, and -38    Paula Skahan, Judge

---

### No. W2007-02899-CCA-R3-CD  - Filed April 19, 2010

---

The defendant, Bruce C. Reliford, entered guilty pleas to aggravated robbery charges, following a remand, and was convicted by a jury of felony murder.  The trial court imposed a life sentence for the felony murder conviction and twelve years for each aggravated robbery conviction, to be served concurrently.  On appeal, the defendant contends that:  the trial court improperly allowed evidence to be introduced at trial; his statement to police was not given voluntarily; and the trial court erred in accepting his guilty pleas and in setting his sentence.  After careful review, we affirm the judgments from the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Sean H. Muizers, Memphis, Tennessee (on appeal), and Larry Copeland and Joseph Ozment, Memphis, Tennessee (at trial), for the appellant, Bruce C. Reliford.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and James Wax and Steve Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

On December 24, 1992, the defendant robbed two employees at a Memphis gas station.  He also shot and killed Shannon Wilson and stole Wilson's car in the process of fleeing the scene.  Initially, the defendant entered the gas station and grabbed Cynthia Coleman.  He ordered two other women to go into the women's restroom and demanded that Ms. Coleman open the safe.  The defendant was armed with a gun and threatened to kill Ms. Coleman if she did not open the safe and give him the money.  He told Ms. Coleman not to

touch the phone and that if a police car came onto the lot, he would go to jail for murder because he would blow her brains out. She estimated that she gave the defendant approximately $6000 and put it in a brown paper bag. Ms. Coleman then went into the men's restroom and locked the door.

After he got the money from the safe, the defendant knocked on the women's restroom door and demanded Karen Yarber's car keys. She complied with his demand after the defendant pointed the gun at her and told her to give him the keys. The women emerged from the restrooms after the defendant left, and Ms. Yarber observed that the defendant had not taken her car. Ms. Coleman called 911 to report the robbery when she was sure the defendant was gone.

The women in the gas station observed a lot of "commotion" at the Toddle House across the street. The police later returned with the bag of money, Ms. Yarber's keys, and the jacket the defendant had been wearing when he robbed the store.

Vincent Price testified that he was eating breakfast at the Toddle House when he heard a loud crash outside. He went outside to see what happened and heard someone yell, "[H]e shot me." He saw the defendant standing over Shannon Wilson, who was lying on the ground near a car. Mr. Price testified that he observed the defendant step over Wilson's body, get in the car, and drive away. He told police that the car was a dark blue Toyota. Mr. Price applied pressure to a gunshot wound in the victim's chest until the ambulance arrived.

Shannon Wilson's father testified that his son purchased a new dark blue Toyota about a month before he was killed.

On the day following the robbery and shooting, the witnesses, Ms. Chapman, Ms. Yarber, and Mr. Price, were called to the police station to view a lineup. Each witness identified the defendant as the man responsible for the robbery.

Sergeant Alan Pinnow testified that he interviewed the defendant two days after the crimes. He said that the defendant executed a waiver of his right to remain silent and his right to counsel and agreed to answer the sergeant's questions. The defendant confessed to robbing the gas station and identified the gun that he used to commit the crimes. The defendant also acknowledged that he took Ms. Yarber's car keys so he could escape in her car but, when he was unable to open her car, he ran across the street to the restaurant where he found Wilson sitting in his car. The defendant told the police that Wilson grabbed the gun from him, and it went off. The defendant said that he then got in the car and fled the scene. The defendant's interview was transcribed in the robbery bureau. When the statement was

-2-

presented to the defendant, he refused to sign it because there was an error in the transcript.

Dr. O. C. Smith testified that he was an assistant medical examiner in Shelby County in 1992 and that he performed an autopsy on Wilson's body. He determined that Wilson died of a gunshot wound to the right side of his lower chest.

The defendant presented two witnesses who testified that someone at the lineup said, "That's him, that's him" during the identification process.

Linda Sue Ridgell testified that she was standing at the cash register at the Toddle House restaurant when she saw someone shoot a man in the parking lot. She said that she did not get a good look at him but thought he was "five six to five seven" in height. The defendant demonstrated that he was six feet tall. She testified that the outburst from the person in the lineup room had no impact on her identification.

Analysis

The defendant argues that the trial court erred in admitting evidence of the aggravated robberies during his trial for the felony murder of the victim at the Toddle House. He contends that the introduction of the evidence was in violation of Tennessee Rule of Evidence 404(b) and that the videotape of the robberies was not properly authenticated. The defendant's indictments for the robberies at the gas station and the shooting at the restaurant were consolidated for trial. The defendant entered pleas of guilty to the robberies after the jury was selected. During the opening statements for the State, the defendant objected to the introduction of any evidence from the robberies during the murder trial. Specifically, he contends that the evidence was unfairly prejudicial.

Evidence of prior crimes, wrongs, or acts may be admissible to establish intent, knowledge, identity, completion of the story, opportunity, and preparation. Tenn. R. Evid. 404(b). The motive and intent of the defendant in the commission of a murder are almost always critical issues. *State v. Gentry*, 881 S.W.2d 1, 7 (Tenn. Crim. App. 1993). Evidence that proves motive serves the purpose of completing the story of the crime. *State v. Leach*, 148 S.W.2d 42, 47 (Tenn. 2004).

Here, evidence of the defendant's prior aggravated robbery of the gas station was offered by the State to demonstrate the events leading up to the shooting death of Wilson. Although this is not one of the reasons frequently given for proffering evidence of other acts, evidence offered to show contextual background need not be excluded simply for the reason that it involves evidence of prior acts. If the contextual evidence is relevant to an issue other than criminal propensity and its probative value is not outweighed by the danger of unfair

prejudice, then that evidence may be properly admissible. *State v. Gilliland*, 22 S.W.3d 266, 271 (Tenn. 2000). The conditions which must be satisfied before allowing such evidence are:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if the probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). As the language of the Rule indicates, evidence of other acts is admissible so long as that evidence is (1) offered to establish something other than action in conformity with a particular character trait, (2) relevant to a material issue at trial, and (3) such that its probative value is not outweighed by the danger of unfair prejudice. *Gilliland*, 22 S.W.3d at 271.

Here, the trial court satisfied the four conditions of Rule 404(b). The trial court conducted a jury-out hearing and reviewed the evidence of the robbery, including the testimony of the women in the gas station who were threatened by the defendant. The defendant took Ms. Yarber's car keys but was unable to get in her car. The defendant then went across the street to the restaurant where the shooting occurred. The trial court also reviewed a videotape of the robberies. The trial court determined the evidence regarding the robberies was relevant to prove intent and motive for the defendant to shoot Wilson and take his car. The trial court determined that the probative value of the other evidence was not outweighed by any danger of unfair prejudice.

Because the trial court complied with the requirements of Rule 404(b), the decision to admit the evidence is entitled to great deference and may not be disturbed by this court absent a showing that the trial court abused its discretion. *State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005). The defendant has not demonstrated that the trial court abused its discretion. The trial court applied the correct legal standard, and the evidence in the record supports the trial court's determination that the testimony about the robberies at the gas station was admissible in the murder trial.

The defendant also argues that the trial court erred in admitting the store surveillance videotapes into evidence because they were not properly authenticated. Specifically, the defendant argues that the witnesses from the gas station who testified at trial did not give the videotapes to police and, therefore, could not authenticate them. However, Ms. Coleman identified the videotapes during her testimony and confirmed that they contained an accurate depiction of the events of the robbery in the store.

Tennessee Rule of Evidence 901 governs the authentication of evidence. It states in pertinent part that evidence may be authenticated or identified sufficiently for the trial court to admit the evidence but a witness testifying that the matter is what it is claimed to be. Tenn. R. Evid. 901(a). Ms. Coleman's testimony was sufficient to satisfy the admissibility requirement. She testified that she had reviewed the videotapes in which she appeared and that the tapes captured the robbery as it occurred. The trial court did not err in admitting the videotape.

Next, the defendant argues that the trial court should have suppressed the statement he made to police following his arrest. Specifically, he argues that the trial court erred in determining that his unsigned statement should have been admitted at trial. The State argues that the defendant has waived this issue by failing to include a transcript of the evidentiary hearing on the motion to suppress the statement.

Prior to trial, the defendant filed motions to suppress the identification procedure and to suppress his statement. Following a hearing, the trial court denied both motions in a written order dated October 24, 2007. The transcript of the hearing is not in the appellate record. The record does contain the written order which details the facts presented at the evidentiary hearing and sets out findings of fact and conclusions of law made by the trial court. The trial court determined that the defendant signed the advice of rights form and that he freely and voluntarily talked to the police officers.

The trial court's determination at the suppression hearing that a confession was voluntary is presumptively correct on appeal. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999).

When determining whether an accused has voluntarily, knowingly, and intelligently waived his *Miranda* rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. *State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992); *State v. Benton*, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. *State v. Blackstock*, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994)). Where a defendant contends that his

waiver of *Miranda* rights was not voluntarily or understandingly made, the court must consider factors such as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the *Miranda* rights were explained. *Blackstock*, 19 S.W.3d at 208. However, no single factor is necessarily determinative. *Id.*

The trial court's order in the record reflects that Sergeant H. M. Fields testified at the suppression hearing that the defendant was told, "He had a right to remain silent. Anything he said could and would be used against him. He had the right to have an attorney prior to being questioned and basically keeping these rights in mind did he wish to make a statement at that time." The sergeant testified that the defendant read and signed an advice of rights form and that no one pressured or coerced the defendant. The defendant testified that officers grabbed his arm, twisted it behind his back, and hit his head on the desk before forcing him to sign the form. The trial court accredited the testimony of the sergeant and determined that the defendant knowingly and voluntarily signed the waiver of rights form. The defendant has failed to demonstrate that the evidence preponderates against the finding of the trial court.

Next, the defendant argues that the trial court erred in determining that his unsigned statement was admissible. The trial court relied on the decision in *State v. Gregory Lynn Redden*, No. M2000-00988-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 988 (Tenn. Crim. App. at Nashville, Dec. 28, 2000). The defendant in *Redden* also signed an advice of rights form before giving a statement of confession to the crime of which he was ultimately convicted. Redden also refused to sign the statement after it was reduced to writing. *Id.* at *4. This court held that the defendant's oral confession was just as binding as a written confession in the absence of evidence to show that the statement was not given voluntarily. *Id.* at *14 (citing *Campbell v. State*, 384 S.W.2d 4, 9 (Tenn. 1964)). The lack of a signature on the statement did not affect its admissibility, only the potential weight assigned to the evidence by the jury. *Id.* The trial court properly admitted the unsigned statement.

Next, the defendant argues that the trial court erred in accepting his guilty pleas to the aggravated robberies because the court failed to comply with Tennessee Rule of Criminal Procedure 11(b). The trial court reviewed this issue in the defendant's motion for new trial hearing and concluded that any error in accepting the pleas amounted to harmless error.

The United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), held that defendants must waive certain rights in order for their decision to plead guilty to be considered knowing and voluntary. These rights include the right to a jury trial, the right to confront witnesses, and the right against self-incrimination. *Id.* These rights cannot be validly waived without an intentional relinquishment, which cannot be presumed from a silent record. *Id.* To ensure guilty pleas are entered "knowingly and intelligently," *Boykin*

instructs the trial court to discuss with the accused the consequences of the decision. 395 U.S. at 244.

When a trial court fails to advise an accused of these rights, the burden shifts to the State to prove a constitutional plea. *Johnson v. State*, 834 S.W.2d 922, 925 (Tenn. 1992). However, the failure does not, in and of itself, entitle the defendant to relief. *Id.* The State may prove by clear and convincing evidence either substantial compliance with the advice requirement by showing the defendant was made aware of his constitutional rights or that the defendant independently had knowledge of his constitutional rights, rendering the trial court's omission harmless. *Id.*

The standard for determining substantial compliance or harmless error necessarily requires inquiry into circumstantial factors surrounding the plea. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The relative intelligence of the defendant, the degree of his familiarity with criminal proceedings, the opportunity to confer with competent counsel regarding plea options, the extent of advice from counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial are all relevant factors a trial court can use to find a "knowing" and "intelligent" plea. *Id.* at 904 (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)).

The Tennessee Supreme Court established guidelines for reviewing guilty pleas in *State v. Neal*, 810 S.W.2d 131, 137 (Tenn. 1991). The court held that "absolutely literal compliance with the advice to be given is not required." *Id.* at 137. "Substantial compliance" would suffice as long as the "sense of the substance of the required advice . . . is [expressed to an accused prior to a plea of guilty]." *Id.*

Here, the record reflects that the trial court did not follow the Rule 11 guidelines in advising the defendant when he entered his guilty pleas to the two charges of aggravated robbery. The State argues, and we agree, that the record is also clear that the defendant was aware of his rights and voluntarily entered the guilty pleas with the advice of counsel. In the trial court's ruling on this issue at the motion for new trial, the court found the defendant had "quite a history in the criminal justice systems" and had previously entered guilty pleas, including pleas in the underlying case, that were set aside on appeal. The record supports ruling of the trial court. The defendant was present during the jury voir dire and heard the trial court and his counsel review his rights. Any error by the trial court in failing to advise the defendant was harmless.

Next, the petitioner argues that the trial court improperly enhanced his sentence pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). The State agrees that the trial court erred by relying on factors other than prior convictions to enhance the defendant's sentence

-7-

but contends the sentence should be affirmed because the defendant's prior convictions justify the enhanced punishment. The underlying crimes were committed in December 1992. The decision in *Blakely v. Washington*, 542 U.S. 296 (2004), held that the relevant "statutory maximum" for *Apprendi* purposes "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. Thus, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-04. In *Cunningham v. California*, 549 U.S. 270 (2007), the Supreme Court held that, except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

The trial court applied enhancement factors, including: the defendant had a previous history of criminal convictions; the offense involved more than one victim; the defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense; and the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. *See* T.C.A. § 40-35-114(2), (4), (6), and (9) (2006). The application of the factors other than his prior history of convictions violated *Blakely* and its progeny.

However, the defendant did have an extensive history of criminal convictions. The record shows that the trial court "placed the most weight" on this factor in establishing his sentence, which justified an enhancement of his sentence for the crimes, at twelve years. The defendant had convictions including aggravated assault, theft, violation of probation, malicious mischief, and three counts of aggravated robbery. Because the trial court placed the most weight on this factor, the trial court was within its discretion to set the defendant's sentences at twelve years for each aggravated robbery conviction. The defendant is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE