IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY 1996 SESSION



**FILED**

**June 30, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| WILLIAM LEE BRAMLETT, | ) | |
| | ) | |
| Appellant, | ) | No. 01C01-9506-CC-00207 |
| | ) | |
| | ) | Humphreys County |
| v. | ) | |
| | ) | Honorable Allen W. Wallace, Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

Shipp R. Weems
District Public Defender
    and
Robbie T. Beal
Assistant Public Defender
P.O. Box 160
Charlotte, TN 37036

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
    and
Sarah M. Branch
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Dan Mitchum Alsobrooks
District Attorney General
Court Square, P.O. Box 580
Charlotte, TN 37036-0580

George C. Sexton
Assistant District Attorney General
Humphreys County Court House
Waverly, TN 37185

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The petitioner, William Lee Bramlett, appeals as of right from the Humphreys County Criminal Court's dismissal of his petition for post-conviction relief. The petitioner pled guilty to four counts of grand larceny, two counts of obtaining money under false pretenses, statutory rape, contributing to the delinquency of a minor, vandalism, forgery, passing a forged instrument, and three counts of passing worthless checks. In exchange for his pleas, he received an effective sentence of ten years for the various convictions, to be served under the Community Corrections Act of 1985, and the state agreed to the dismissal of several other charges. His community corrections sentence was eventually revoked, and the trial court ordered that he serve his ten-year sentence in the Department of Correction. On July 19, 1991, the petitioner filed a pro se petition for post-conviction relief. Although somewhat rambling, the petition alleged that the petitioner received ineffective assistance of counsel and entered an involuntary plea. The trial court summarily dismissed the petition. This court reversed the summary dismissal and remanded the case for the appointment of counsel. William Lee Bramlett v. State, No. 01C01-9202-CC-00049, Humphreys County (Tenn. Crim. App. May 19, 1994). After the appointment of counsel and an evidentiary hearing, the trial court denied the petition because it concluded that the petitioner understood the terms of his original plea and that his original counsel was effective in his pretrial preparation. The petitioner contests these findings and claims that the trial court improperly refused to grant his request for a copy of the transcript from his guilty plea submission hearing.

The petitioner was the only person to testify at the post-conviction hearing. He complained that his trial attorney failed to explain the specifics of his community corrections sentence. He said that his attorney never told him that he could be resentenced if he violated the terms of his sentence. Although he recalled meeting

2

with his attorney and a corrections officer at his attorney's office, he said that the corrections officer only told him that he would be required to serve ninety days on house arrest and would be required to enroll in a GED program. He said that his attorney told him that once he served ninety days on house arrest, paid restitution, and performed two hundred hours of public service, the rest of his sentence would be served on probation. The petitioner also complained that his attorney failed to investigate the facts of his case adequately.

During cross-examination, the petitioner recalled that when he entered his plea he knew what the charges were against him and knew the charges to which he was pleading guilty. He said that he understood that he had the right to a jury trial, the right to choose whether to testify and the right to cross-examine witnesses. He also said that he understood that there would not be a trial if he pled guilty. The petitioner testified that he understood that in exchange for his plea he would receive two five-year sentences "run together" with all of his other sentences to be served concurrently. He again criticized his attorney for telling him that he would only have to serve ninety days on house arrest and that the rest of his sentence would be on probation. He said that the trial judge never informed him that he may end up serving the entire ten-year sentence.

The petitioner recalled being told that he would serve ten years at thirty percent when he violated house arrest. He said that he thought he would have to serve thirty percent of his sentence but complained that he had already served four years and would not be eligible for parole again for another two years.

Under questioning from the court, the petitioner testified that he entered the plea in order to take care of his family and avoid going to prison. He admitted that the trial court explained to him that he was receiving a community corrections sentence

3

and not a probationary sentence. However, he said that he did not remember the court ever explaining the difference between the two. He also admitted that he signed the last page of the presentence report, a behavioral contract agreement, and a restitution agreement. The paragraphs directly above the defendant's signature on the presentence report and the restitution agreement warn that a violation of the terms of the agreements can result in incarceration and termination from the community corrections program.

The trial court concluded that the petitioner had been fully advised and well represented by counsel when he entered his plea. In reaching its decision, the court noted that it did not increase the petitioner's sentence when he violated the terms of his community corrections sentence, although an increase would have been justified.

I

The petitioner contends that the trial court erred by denying him post-conviction relief based upon his claim of ineffective assistance of counsel. He argues that in the absence of proof from the state, the trial court should have granted him relief on the ineffective assistance of counsel claim based on the allegations in the pro se petition and on the petitioner's testimony concerning his attorney's failure to investigate possible defenses and failure to advise him of his rights.

The burden was on the petitioner in the trial court to prove his allegations that would entitle him to relief by a preponderance of the evidence.[1] Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). On appeal, we are bound by the trial court's findings unless we conclude that the evidence preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). In this respect,

---

[1] For post-conviction petitions filed after May 10, 1995, petitioners have the burden of proving factual allegations by clear and convincing evidence. T.C.A. § 40-30-210(f) (Supp. 1996).

4

the petitioner has the burden of illustrating how the evidence preponderates against the judgment entered. Id.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973), cert. denied, 444 U.S. 944 (1979). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight"). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Also, we note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069. In this vein, the petitioner had the burden of demonstrating that, but for his counsel's errors, he would have insisted on having a trial. See Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

5

The petitioner argues that his trial counsel was deficient for failing to advise him of his rights and failing to investigate his cases. However, he has failed to demonstrate that he was prejudiced by the alleged deficiencies. According to the petitioner's testimony, he understood that he was waiving his right to a trial, right to cross-examine witnesses against him, and the right not to testify when he entered his plea. The petitioner also testified that the trial court informed him he was receiving a community corrections sentence and that he pled guilty to avoid going to prison. The petitioner does not claim that his counsel's errors caused him to plead guilty. To the contrary, the petitioner's attorney informed the court during the post-conviction hearing that if the petition for post-conviction relief was granted, the petitioner would seek to enter into another plea agreement.[2] Under these circumstances, the trial court did not err in denying post-conviction relief on the ground of ineffectiveness of trial counsel.

## II

The petitioner also contends that the trial court erred by denying his post-conviction petition because the record does not demonstrate that he was adequately advised by the court as to his rights or his understanding of the terms of the plea bargain. He argues that in the absence of proof to the contrary, this court must assume that the trial court failed to advise him. The state counters that the petitioner failed to meet his burden of proving that his plea was involuntary and that the petitioner's own testimony was sufficient to establish that he entered a knowing and voluntary plea. We agree.

The issue concerning invalid guilty pleas is controlled by State v. Neal, 810 S.W.2d 131 (Tenn. 1991) and Johnson v. State, 834 S.W.2d 922 (Tenn. 1992),

---

[2] As a matter of fact, the record reflects that the petitioner's real complaints dealt with, according to him, how the Department of Correction was computing his parole eligibility for his sentences in a manner differently than he had expected. Thus, his "goal" in this proceeding was to have the trial court vacate his convictions in order for him to renegotiate and restructure a plea agreement.

which bear upon the procedural and substantive requirements for the entry of a guilty plea in order that a valid judgment of conviction may be obtained and for subsequent review of the validity of a conviction based upon a guilty plea. These cases stem, in part, from Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969) in which the Supreme Court stated that entry of a guilty plea effectively constituted a waiver of certain constitutional rights: the right against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by a jury. Boykin held that a valid waiver of such a right required the intentional relinquishment or abandonment of a known right and that such a waiver may not be presumed from a silent record. Id. The petitioner's testimony reflects that he understood at the time he entered his plea that he was waiving his constitutional rights to be free from compulsory self-incrimination, to a trial by jury, and to confront and cross-examine witnesses. Therefore, no Boykin violation occurred.

Also, there is nothing in the record before us to indicate that the petitioner was coerced into entering his plea. When the post-conviction court asked the petitioner how he was coerced into pleading guilty, the petitioner replied that he pled guilty because he wanted to take care of his family and avoid going to prison. The presentence report and the restitution agreement the petitioner signed explicitly warned the petitioner that he could be incarcerated if he failed to comply with the terms of his sentences. The record supports the trial court's finding that the petitioner knowingly and voluntarily entered his pleas.

III

Finally, the petitioner contends that the trial court erred by not granting his request for a transcript of his guilty plea submission. When the post-conviction court inquired as to why the petitioner needed a transcript of the guilty plea submission, the petitioner's attorney responded that the transcript was needed to show that the

7

petitioner was not advised that he could be resentenced if he violated his community corrections sentence. The trial court refused to grant the transcript because it concluded that the petitioner was not entitled to relief even if the court failed to give him such advice. We agree with the trial court's conclusion under the circumstances in this case.

Under T.C.A. § 40-30-113(1990) [repealed 1995], a post-conviction court has the authority to furnish an indigent petitioner with "certified copies of such documents or parts of the record on file in his office as may be required." However, the trial court is not obligated to furnish an indigent petitioner a transcript unless it "may be of reasonable assistance to the petitioner in establishing his right to the relief sought." Dotson v. State, 477 S.W.2d 763, 64 (Tenn. Crim. App. 1971). Obviously, once the trial court assumed the truth of the only fact that the petitioner sought to prove with the transcript, in the present case, the transcript was not needed.

In the context of this case, the trial court's failure to advise the petitioner that he could be resentenced for violating the terms of the community corrections program does not rise to the level of constitutional error that would entitle the petitioner to post-conviction relief. As previously noted, the petitioner's testimony established that he understood that he was receiving an effective ten-year community corrections sentence. The presentence report and the restitution agreement the petitioner signed explicitly warned the petitioner that he could be incarcerated if he failed to comply with the terms of his sentence. Although the petitioner sought a copy of his guilty plea submission transcript to prove that he was not advised of the potential for resentencing under the Community Corrections Act, it is significant that his resentencing was for the same term of years. Moreover, he never claimed that he would not have pled guilty if he had been advised of the potential for resentencing upon revocation. We agree with the trial court's assessment that the petitioner entered a knowing and voluntary plea

8

even if the trial court failed to advise him that he could be resentenced under the Community Corrections Act. Thus, the trial court was justified in denying the petitioner's request for a transcript of the plea submission hearing.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

                                                        _____
                                                      Joseph M. Tipton, Judge

CONCUR:


_____
Paul G. Summers, Judge


_____
David H. Welles, Judge