IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



FILED

June 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| MARIO PERKINS, | ) | |
| | ) | |
| Appellant, | ) | No. 02C01-9805-CR-00127 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable Bernie Weinman, Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:                    For the Appellee:

Randall B. Tolley                     Paul G. Summers
242 Poplar Avenue                     Attorney General of Tennessee
Memphis, TN 38103
                                      Michael E. Moore
                                      Solicitor General

                                      J. Ross Dyer
                                      Assistant Attorney General of Tennessee
                                      450 James Robertson Parkway
                                      Nashville, TN 37243-0493

                                      William L. Gibbons
                                      District Attorney General
                                           and
                                      Alanda Horne
                                      Assistant District Attorney General
                                      201 Poplar Avenue
                                      Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The petitioner, Mario Perkins, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The petitioner was originally charged with aggravated robbery and first degree murder, but he pled guilty to aggravated robbery and second degree murder pursuant to a plea bargain. He was sentenced as a Range I, standard offender to eight years for the aggravated robbery conviction and as a Range III, persistent offender to forty-five years for the second degree murder conviction. The sentences were ordered to be served concurrently in the custody of the Department of Correction. The petitioner now presents the following issues for our review:

> (1) whether his guilty plea[1] was knowing and voluntary; and
>
> (2) whether he received the ineffective assistance of counsel.

We affirm the trial court's denial of post-conviction relief.

At the evidentiary hearing, the petitioner testified that he was sixteen at the time he entered his guilty plea. He said he met with his attorney one time before the guilty plea hearing. He said he agreed to a sentence as a Range III offender because the trial judge threatened to sentence him to life without parole if he did not make a decision and plead guilty that day. He said he thought he would serve forty-five percent of his sentence, not eighty-five percent. He stated that he did not remember having any discussions with the trial court or with his attorney regarding the offense being a Class A felony. He said the trial court told him that the state would try the aggravated robbery case first and if he was convicted, they would use that conviction against him in the murder case.

---

[1]Although the petition for post-conviction relief refers to both of the petitioner's convictions upon guilty pleas, the petitioner's proof and argument and the trial court's decision focus only on the plea to second degree murder. We will review that decision.

2

On cross-examination, the petitioner admitted that he confessed to killing the victim. He said he knew he would be facing the possibility of life without parole if he went to trial. He said his attorney spoke with him every time he was in court and came to see him once in jail to discuss the case. He stated that he did not understand the judge's explanation of his sentence because the judge told him two different things. He said that it was not until after he signed the plea agreement that the judge told him that a jury would decide his sentence if he went to trial, not the judge. He admitted that he told the judge that he did not have any questions and that his attorney had done everything he wanted him to do. He testified that after he had time to think about it, he wished he had not entered the guilty plea because he did not want to serve forty-five years as a Range III offender. He admitted that on the day of the plea hearing, he did not want to go to trial and face the possibility of life without parole.

The petitioner's father, Randy Perkins, testified that he asked the judge at the plea hearing how the petitioner could receive a Range III sentence as a first-time offender. He testified that the judge told him that the state would try the aggravated robbery case first then use that conviction against the petitioner in the murder case. He said the judge explained that if the petitioner was found guilty at trial, he would sentence him to life without parole. Mr. Perkins testified that a trial court clerk spoke to them outside the courtroom during a recess and told them that they should not go to trial because of what the judge would do. He stated that the clerk told them that the judge would be very hard on the petitioner at trial. He testified that he remembered the judge indicating that a decision on the plea had to be made that day or the state would go to trial and the offer would be revoked.

On cross-examination, Mr. Perkins admitted that he did not tell the judge about his conversation with the court clerk. He said he must have lied to the judge when he said he was satisfied with the representation of the petitioner's attorney.

The petitioner's attorney testified that he discussed the state's offer with the petitioner and the possibility of success at trial. He said he believed he shared discovery with the petitioner. He stated that he visited the petitioner several times in jail and spoke with the petitioner's parents several times. He said that he explained to the petitioner the state's offer of pleading guilty to second degree murder with a forty-five year sentence as a Range III offender and that he asked the judge to explain it again at the plea hearing. He stated that because he was uncertain whether the petitioner understood what he was doing, he also explained the offer to the petitioner's parents and let them discuss it with the petitioner. He said he discussed with the petitioner the ramifications of going to trial, but he never threatened or coerced the petitioner into pleading guilty. He said the prosecutor told him that the state would try the aggravated robbery case first then use that conviction to get a sentence of life without parole in the murder case. He said he explained this to the petitioner and his family. He stated that at the time the pleas were entered, he was satisfied that both the petitioner and his family understood the plea agreement.

On cross-examination, the attorney testified that he did not present the state's offer to the petitioner immediately because he thought it was a bad offer. He said he tried to get a better offer from the state, but he took the offer to the petitioner when he was unsuccessful. He said he explained to the petitioner that his options were to either accept the agreement or to go to trial. He said he did not believe that the state filed a notice of intent to seek enhanced punishment, and he said the petitioner did not have a criminal record. He testified that he did not recall the judge putting any pressure on the petitioner to accept the plea agreement. He said he believed the judge decided that once he set a trial date, the petitioner could not change his mind and try to accept the plea because the offer would no longer stand. He admitted that the state usually made that determination. He said it would have been pointless to request additional

time for the petitioner to consider the plea because the petitioner and his family had already agreed to accept it.

The trial court denied the petition. It found that the petitioner freely and voluntarily entered his guilty plea after being fully advised of his rights by his attorney and by the court. It also found that the advice given and the services rendered by the petitioner's attorney were within the range of competence demanded of an attorney in a criminal case.

## I. GUILTY PLEA

The petitioner contends that his plea was not voluntary because (1) he was pressured and coerced by the trial court into accepting the plea agreement, (2) he was confused by the trial court's explanation of his sentence, and (3) the trial court did not require the state to file notice of its intent to seek enhanced punishment as required by Tenn. Code Ann. § 40-35-202(a). The state contends that the petitioner's plea was knowing and voluntary and that the trial court painstakingly and accurately explained to the petitioner and his parents the ramifications of pleading guilty and the ramifications of going to trial. The state argues that it was not required to submit notice of intent to seek enhanced punishment.

The transcript of the guilty plea hearing reflects that the trial court thoroughly explained to the petitioner the constitutional rights he was waiving by pleading guilty and that the trial court complied with Rule 11, Tenn. R. Crim. P. See Johnson v. State, 834 S.W.2d 922 (Tenn. 1992); State v. Neal, 810 S.W.2d 131 (Tenn. 1991). Furthermore, nothing in the record indicates that the petitioner was coerced or threatened by the trial court. The petitioner asserts that the trial court threatened to sentence him to life without parole if he elected to go to trial. However, at the plea hearing, the trial court specifically stated, "Now, if you're convicted of anything less than

5

murder in the first degree, I would sentence you. And if you were convicted of murder in the first degree, the jury would sentence you." Later, the petitioner's father asked the trial court whether it had stated that it would sentence the petitioner to life without parole if the petitioner went to trial and was convicted of first degree murder. The trial court stated, "Well, no, no I didn't . . . . The jury would do the sentencing in the murder case, not me. The jury would do that." The record also reflects the following colloquy between the trial court and the petitioner at the beginning of the plea hearing:

> COURT: I'm not at all going to suggest that you need to have a trial in this case. I'm not, at all, suggesting that you shouldn't have a trial. I just want to make sure that you understand what you are doing and that you make the choice that you want to make, after you're informed and know what's going on. Do you understand that?
>
> PETITIONER: Yes, sir.

Nothing in the record supports the petitioner's contention that he was coerced and threatened by the trial court into accepting the plea agreement.

The petitioner also contends that he was coerced by the trial court because the trial court told him that the state would try the aggravated robbery case first, and if he was convicted, the state would use this to get a sentence of life without parole in the murder case. The record reflects that the prosecutor explained that the state intended to do just that. Rather than coercing the petitioner, the trial court was merely explaining to the petitioner the potential ramifications of a trial.

The petitioner argues that his plea was not knowing because he did not understand his sentencing range. However, the record reflects that the petitioner was adequately apprised of the fact that he would serve eighty-five percent of his sentence. Although at one point during the guilty plea hearing the trial court misstated that the petitioner was to serve forty-five percent of his sentence, the trial court later instructed the petitioner and his parents that he would serve eighty-five percent of his sentence, and the following colloquy occurred:

6

> COURT: . . . . So we know for sure, that if he doesn't misbehave and lose all his credits, that when he's served eighty-five percent of forty-five years, he will have served his time and he'll be out. Not on parole, he'll be released.
>
> PETITIONER'S FATHER: But, okay then, we going [sic] to accept the time, then.
>
> . . . .
>
> PETITIONER'S FATHER: We agree upon it.
>
> COURT: . . . . Mr. Mario Perkins, you understand what we've done and you agree with this guilty plea; is that correct?
>
> PETITIONER: Yes, sir.

The record reflects that the petitioner was correctly apprised that he would serve eighty-five percent of his sentence and that the petitioner agreed that he understood the sentence and accepted the plea agreement.

Finally, the petitioner contends that the trial court did not require the state to submit notice of its intent to seek enhanced punishment ten days before the guilty plea hearing, as required by Tenn. Code Ann. § 40-35-202. We believe that the petitioner misapprehends the purpose of Tenn. Code Ann. § 40-35-202. That statute deals with the requirement of advanced notice by the state of its intent to use a defendant's previous convictions to enhance the sentence. The purpose of the statute is to provide fair notice to a defendant that he or she is exposed to a greater sentence due to his or her previous criminal convictions. See State v. Adams, 788 S.W.2d 557 (Tenn. 1990). In the present case, the petitioner did not have any prior convictions; rather, the petitioner agreed upon a sentence in an enhanced range as a part of his plea agreement to second degree murder. Under these circumstances, Tenn. Code Ann. § 40-35-202 is not applicable. This issue is without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that his attorney was ineffective. Specifically, he argues that his attorney did not adequately inform him of the consequences of his plea.

7

The petitioner also makes myriad other statements with respect to what his attorney did or did not do, but he does not articulate in what way his attorney's actions were deficient or how he was prejudiced. The state contends that the trial court correctly concluded that the petitioner received the effective assistance of counsel. We agree.

In a post-conviction case, the petitioner must prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-35-210(f). To establish the ineffectiveness of counsel, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). Relative to a claim that a guilty plea resulted from the ineffective assistance of counsel, the petitioner must show that but for counsel's errors, he would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). In this respect, the petitioner, as the appellant, has the burden of illustrating how the evidence preponderates against the judgment entered. Id.

The petitioner's trial attorney testified that he explained the state's offer to the petitioner and that he requested that the trial court explain the offer to the petitioner at the plea hearing. He testified that he also explained the offer to the petitioner's parents and asked them to discuss it with the petitioner to ensure that the petitioner understood the offer. He testified that he explained to the petitioner the ramifications of going to trial. The attorney testified that he did not request additional time for the petitioner to consider the offer because both the petitioner and his father stated that they wanted to accept the offer. We conclude that the petitioner has not demonstrated

8

that the record preponderates against the trial court's finding that he received the effective assistance of counsel.

In his brief, the petitioner also makes the following statements with respect to his attorney's performance: (1) the attorney could not remember whether he shared discovery with the petitioner, (2) the attorney stated that he did not know whether the petitioner understood what he was doing, (3) the attorney first told the petitioner that both cases would be tried at the same time but later told the petitioner that the state would try the aggravated robbery case first, (4) the attorney could not remember when he received the plea offer from the state, (5) the attorney did not immediately take the offer to the petitioner, (6) the attorney told the petitioner that he would have to go to trial if he did not accept the offer, (7) the attorney admitted that the state did not file notice of its intent to seek enhanced punishment and that he did not object to this, (8) the attorney allowed the petitioner to plead guilty to a sentence above his range, but he did not have any authority for allowing the petitioner to do so, (9) the attorney only met with the petitioner once, and (10) the attorney did not inform the petitioner of the state's offer until the day of the hearing.

The petitioner makes no argument with respect to how these alleged actions by his attorney were deficient or how he was prejudiced by them. We note that some of the allegations listed in the petitioner's statements are directly contradicted by the proof in the record. In any event, the statements do not rise to the level of allegations that would entitle the petitioner to relief because the petitioner has not shown that the evidence preponderates against the trial court's finding of effective assistance.

In consideration of the foregoing and the record as a whole, we affirm the trial court's denial of post-conviction relief.

9

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Gary R. Wade, Presiding Judge


_____
Thomas T. Woodall, Judge