# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 22, 2003

## RONNIE LEE HOUCK v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
### No. 72113     Richard R. Baumgartner, Judge

_____

### No. E2002-00642-CCA-R3-PC
### February 25, 2003
_____

The Knox County Criminal Court denied petitioner Ronnie Lee Houck post-conviction relief following an evidentiary hearing.  The petitioner challenged his 2000 conviction of aggravated sexual battery on the grounds that his guilty plea to that offense was unknowing and involuntary and the product of ineffective assistance of counsel.  From the denial of post-conviction relief, the petitioner appeals.  We find no error and affirm the lower court's judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Mike Whalen, Knoxville, Tennessee, for the Appellant, Ronnie Lee Houck.

Paul G. Summers, Attorney General & Reporter; Christine M. Lapps, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leland L. Price, Assistant District Attorney General, for the Appellant, State of Tennessee.

### OPINION

The petitioner's guilty plea to aggravated sexual battery disposed of an indictment charging him not only with that offense, but also with two counts of rape of a child.  Pursuant to the petitioner's plea agreement, the trial court imposed a conviction of aggravated sexual battery, a Class B felony,  on April 14, 2000.  The court sentenced the petitioner to serve ten years in the Department of Correction.

The post-conviction petition, as amended, alleged that trial counsel was ineffective in failing to (1) adequately investigate the case, (2) interview and subpoena witnesses, (3) adequately advise the petitioner about his defenses and his choice to plead guilty, (4) obtain investigative and expert witness assistance, (5) develop a reasonable trial strategy, and (6) consult with the petitioner during crucial stages of the case.  The petitioner also alleges that the guilty plea was unknowing and

involuntary due to the ineffectiveness of his counsel and to his mental condition at the time of the plea.

The post-conviction court conducted an evidentiary hearing on February 14, 2002. In the hearing, the petitioner testified that his mother-in-law had instigated his stepdaughter's claim that the petitioner had sexually abused the stepdaughter as a means of breaking up the petitioner's marriage. He testified that he asked trial counsel to "talk to [his] family, have [the victim] reexamined by another doctor." The petitioner testified that he wanted counsel to depose his mother, who lived in Pennsylvania and was unable to come to Tennessee. Apparently, the petitioner believed his mother could testify that his mother-in-law had told his mother that the mother-in-law wanted better for her daughter than to be married to the petitioner. The petitioner complained that he never saw the state's physical evidence, including a videotape of the victim's interview with a social worker. Ultimately, counsel informed the petitioner that the tape had been lost.

The petitioner testified that, early in the attorney-client relationship, counsel told him that he contacts his clients two weeks before trial as a means of launching a final phase of trial preparation; yet, when one of the petitioner's scheduled trial dates was only two days away, the petitioner called counsel and complained that counsel had not called. The petitioner testified that counsel said he had forgotten about the trial date.

The petitioner complained that he only met with counsel in his office twice and that counsel never "called [him] in to sit down in his office and talk about the case or nothing."

The petitioner testified that, during the pendency of the charges against him, his mother was dying, and his mental health was poor. Twice he attempted suicide by overdosing with pills, and once he cut his wrist. He stated that he informed his counsel of these attempts to take his own life. When counsel informed him in March 2000 that the trial could not be postponed, the petitioner responded that he "couldn't handle" it and asked that, if he pleaded guilty, could he go to Lakeshore mental hospital to serve his sentence.

The petitioner testified that he verbally agreed to the plea on February 16, 2000, but prior to his March 25 plea submission hearing, he contacted counsel and told him he did not want to plead guilty. Counsel informed him that he could not back out and that, if he tried, the judge would revoke his bond, hold him until trial, and following a conviction, give him the maximum sentence. The petitioner testified that counsel told him he could enter a best-interest plea, but when the petitioner came to court, counsel said that the judge would not allow the best-interest plea. Because the petitioner did not arrive at the courthouse on time that day, he was incarcerated, and the hearing was postponed for two weeks. He testified that he tried calling counsel's office but that counsel avoided him. He left messages at counsel's office that he did not wish to plead guilty.

On the next scheduled court date, counsel's associate, whom the petitioner had not met, brought the petitioner the plea papers. The petitioner got into an argument with the associate when the petitioner insisted on talking with his original attorney. The associate told the petitioner

that he would have to take the plea or go to trial that day. The petitioner testified that it bothered him that the associate attorney discussed these matters in the presence of ten or twelve other prisoners in the courthouse holding cell. The petitioner felt that disclosures to other prisoners that the petitioner was accused of abusing a child would endanger him while in jail, so he signed the papers.

Petitioner testified that, despite his intention not to plead guilty and his desire to speak with his original lawyer, he signed the papers as a means of getting the associate lawyer to quit talking about the case in front of other prisoners and because the petitioner was depressed. The petitioner testified that he believed that if he did not sign the papers, he would be forced to trial that day and that his attorneys were not prepared for trial. He denied that he is guilty of the conviction offense and testified that, under the circumstances on April 14, 2000, he had no choice but to plead guilty.

On cross-examination, the petitioner admitted that, in the weeks prior to February 16, 2000, he was in Pennsylvania. He admitted that, at the plea submission hearing, the judge informed him that he could not be forced to plead guilty and that the petitioner had indicated that he understood his rights. He also admitted that he "gritted his teeth" and denied that anyone had threatened or pressured him into pleading guilty.

The petitioner's trial counsel testified for the state in the evidentiary hearing. Early in his handling of the petitioner's case, he met with Dr. Trant Nichols concerning the claim that the victim had been penetrated with a penis. The victim's examination revealed that her hymen was still intact to some extent but had been opened by some form of penetration or attempted penetration. Counsel testified that the victim's statement included details that were credible, including a graphic account of the victim fellating the defendant in which the victim described the appearance and taste of semen.

Counsel testified that he realized that it would be in the petitioner's best interests to negotiate a plea that would avoid a Class A felony conviction. The petitioner wanted to work the case out and desired an eight-year sentence, but the state's initial offer was for twelve years. When counsel was able to negotiate a ten-year sentence, the petitioner initially accepted but later backed out more than once. The petitioner was in Pennsylvania during this time, and counsel spoke with him by phone almost daily. Counsel denied that the petitioner told him that he had cut his wrist, but counsel admitted that he knew that the petitioner was depressed. The petitioner wanted a continuance, despite that the case was four years old and counsel had already obtained several continuances. Counsel informed the petitioner that the prosecutor opposed any further continuances.

Counsel testified that he explained to the petitioner that, if the petitioner told the court that he did not want to plead after agreeing on a plea and arranging a plea date, he would be confined and, through a prohibitive bond, would not be allowed to return to Pennsylvania to await trial.

Counsel testified that none of his experience with the petitioner indicated a basis for a competency evaluation.

The post-conviction court exhibited to the evidentiary hearing a transcript of the petitioner's April 14, 2000 plea submission hearing.

At the conclusion of the evidence, the post-conviction court made the following findings from the bench:

(1) Trial counsel properly investigated and prepared the case, including the exploration of the use of an expert witness.

(2) Counsel adequately communicated with the petitioner. Face-to-face communication between the petitioner and trial counsel was hampered by the petitioner spending a lot of time in Pennsylvania but that, nevertheless, counsel frequently communicated with his client via telephone.

(3) Counsel correctly advised the petitioner that, had he announced a plea agreement that caused the excusing of the jurors and then had he come to court on the scheduled trial to recant the plea and ask for a trial date, the court would have detained the petitioner and reviewed the bond situation.

(4) The petitioner appeared before the court at the plea submission hearing on April 14, 2000, and convincingly professed to understand his rights, acknowledge guilt, and voluntarily plead guilty. The post-conviction court opined that, although the petitioner was understandably reluctant to plead, he

realized the risk of not entering the plea, [was] fully apprised of the situations, and made a voluntary, knowing choice to enter the plea on that date . . . that this was a voluntary, although maybe not enthusiastic, plea in this case.

(5) If the court were to accept the petitioner's rationale for avoiding his guilty plea, "there would never be a valid plea that [the court] could take."

(6) Trial counsel's performance was within the range of competency demanded of criminal defense attorneys.

Based upon these findings, the court denied post-conviction relief, and the petitioner appealed.

-4-

The post-conviction petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901, n. 3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless it concludes that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App.1990).

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys in criminal cases." *Summerlin v. State*, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In *Strickland v. Washington*, the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. *Strickland,* 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the appellant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. *Id.* at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him, that the errors were so serious as to deprive the defendant of a fair trial, and call into question the reliability of the outcome. *Id.*, 104 S. Ct. at 2004.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Id.* at 695, 104 S. Ct. at 2070. The petitioner must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.,* 104 S. Ct. at 2070.

To establish ineffective assistance of counsel in Tennessee, evidence stemming from a failure to prepare a sound defense or present witnesses must be significant. However, a reasonable probability of being found guilty of a lesser charge, or of receiving a shorter sentence, satisfies the prejudice requirement of *Strickland. State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App.1991). In cases involving a guilty plea or plea of *nolo contendere*, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366 370 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

When the accused opts to plead guilty, the plea must be voluntarily, understandingly, and knowingly entered to pass constitutional muster. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969). In Tennessee, a plea must be made voluntarily and with full understanding

of its consequences. *State v. Neal*, 810 S.W.2d 131, 134-135 (Tenn. 1991); *State ex rel. Barnes v. Henderson*, 220 Tenn. 719, 727, 423 S.W.2d 497, 501 (1968). Entry of a guilty plea constitutes a waiver of constitutional rights including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. Waiver of constitutional rights may not be presumed from a silent record. *Id.* In determining whether a plea of guilty was voluntarily, understandingly, and intelligently entered, this court, like the trial court, must consider all of the relevant circumstances that existed at the entry of the plea. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In the present case, the record contains a transcript of the plea submission hearing. It reflects that the trial judge fully administered the litany of explanations and warnings mandated by our constitutions and Tennessee Rule of Criminal Procedure 11. The petitioner indicated his understanding and willingness to waive trial and all the rights attendant to trial. Despite the trial judge asking questions and meaningfully probing the petitioner's competence, willingness, and preparedness to plead guilty, thereby giving him the opportunity to abandon the plea, the petitioner affirmatively acknowledged that he wished to plead guilty and that he was guilty. We conclude that the record supports the post-conviction court's determination that the petitioner submitted a voluntary guilty plea.

The record also supports the lower court's determination that the plea was made knowingly and that trial counsel rendered effective assistance. The post-conviction judge accredited the testimony of the petitioner's trial attorney, who testified that he explored the possibility of a defense of innocence and who determined that the state's case was strong and foreboding. Based upon counsel's testimony, the petitioner was fully informed about the status and prospects of his case and was able to make a knowing decision to plead guilty. Moreover, the petitioner did not establish at the evidentiary hearing the existence of witnesses whose information would have benefitted the petitioner at trial.

Upon the record before us, the petitioner failed to establish by clear and convincing evidence that his plea was invalid for any reason or that his attorney rendered ineffective assistance. The judgment of the lower court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE