# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 10, 2009

## TRAVIS JAY LESTER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Wilson County**
**No. 06-0769     Jane Wheatcraft, Judge**

_____

**No. M2009-00523-CCA-R3-PC - Filed May 21, 2010**

_____

The Petitioner, Travis Jay Lester, pled guilty in the Wilson County Criminal Court to introduction of contraband into a penal facility, resisting arrest, and two counts of assault. He received a total effective sentence of four years in the Tennessee Department of Correction. Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the Petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

A. Ensley Hagan, Jr., Lebanon, Tennessee, for the appellant, Travis Jay Lester.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Jason Lawson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record before us reveals that on July 12, 2007, the Petitioner entered an "open" guilty plea to introduction of contraband into a penal facility, a Class C felony, with the sentence to be determined by the trial court. At the guilty plea hearing, the Petitioner acknowledged that he knew he could receive a sentence between three and six years. The

Petitioner was released on bond while awaiting sentencing. After the guilty plea to the felony was entered, but before the Petitioner was sentenced, he incurred three misdemeanor charges, resisting arrest and two counts of assault. At the sentencing hearing on the felony drug charge on September 10, 2007, the Petitioner also entered guilty pleas to the three misdemeanor charges. The plea agreement provided that the Petitioner would receive a sentence of six months for the resisting arrest conviction and eleven months and twenty-nine days for each assault conviction. Additionally, the Petitioner entered into an agreed sentence of four years in the Tennessee Department of Correction for the felony conviction. The agreement provided that the misdemeanor sentences were to be served concurrently with each other and with the felony sentence. At the September hearing, the trial court reviewed the terms of the agreement for the felony and misdemeanor sentences and asked the Petitioner if that was his understanding of the agreement. The Petitioner answered affirmatively.

At the post-conviction hearing, the Petitioner testified that he had no complaints regarding the July 12, 2007 proceedings but that he did not fully understand the implications of the guilty plea/sentencing hearing on September 10, 2007. The Petitioner acknowledged that he agreed to a four-year sentence at thirty percent. However, he averred that counsel explained to him that he would be released after serving thirty percent, fifteen months, of his four-year sentence in confinement, not that he was only eligible for release at that point. He maintained that he was never informed about the parole board or that he was required to meet criteria to be released on parole. He said if he had understood the sentence, he would not have pled guilty to the felony offense.

The Petitioner stated that he had never been convicted of a felony. Regardless, he conceded that he had twenty-four prior misdemeanor convictions, some of which were the result of guilty pleas. He stated that when he pled guilty to the felony drug offense, he was aware that the trial court could sentence him to as few as three years or as many as six years.

The Petitioner said that he and counsel discussed getting him into the drug court program, but the plan never came to fruition. The Petitioner said he spoke with individuals involved in the drug court program and was told that he would be evaluated for admittance into the program. However, no evaluation was ever performed, and the Petitioner was sent to the Tennessee Department of Correction. The Petitioner said he hoped to get into the drug court program, but he understood he might not be accepted.

The Petitioner said he entered guilty pleas to the misdemeanor charges because he was told the misdemeanor sentences would be run concurrently with the felony sentence. The Petitioner acknowledged he was aware that if convicted at trial, he could have been sentenced to six years for the felony conviction, eleven months and twenty-nine days for each

assault conviction, and six months for the resisting arrest conviction. The Petitioner further acknowledged that if consecutive sentences were imposed, his potential sentence could have been as much as eight and one-half years.

The Petitioner maintained that he saw trial counsel infrequently. He conceded that he did not visit counsel while he was out on bond between the July guilty plea hearing and the September guilty plea/sentencing hearing. The Petitioner acknowledged he had telephone conversations with trial counsel, but he said he wrote counsel letters to which she never responded.

The Petitioner said he had an eighth grade education and had difficulty reading. He said that when he told the trial court that he had a tenth grade education he was "[p]robably not even thinking about it."

The Petitioner's trial counsel testified that she was appointed to represent the Petitioner. She said she never guaranteed that he would be released from his four-year sentence after serving fifteen months in prison; she very carefully explained to him that he was only "parole eligible" at that time. Counsel informed the Petitioner that the parole board would consider factors such as behavior during incarceration and sentencing credits in determining whether to grant parole. She said she had detailed notes about calculating the Petitioner's possible prison sentences.

Counsel said she was aware the instant case was the Petitioner's first felony conviction; however, because of his extensive misdemeanor history and his three new misdemeanor charges, the Petitioner faced a possible total sentence of eight and one-half years. Counsel stated that she tried to negotiate a three-year sentence for the felony conviction, but her attempts were unsuccessful.

Trial counsel opined that a trial was not in the Petitioner's best interest. She observed that the State had an audiotaped recording of a telephone conversation in which the Petitioner, who was at that time incarcerated, instructed his mother to obtain drugs and leave them for someone on the jail work crew to pick up and bring into the jail. Counsel said that during the conversation, the Petitioner was obviously "calling the shots" and spoke to his mother in a "seriously abusive nature." Counsel believed the audiotape, which clearly established the Petitioner's guilt of the charged felony, and his considerable misdemeanor history would reflect poorly on him at trial and at sentencing, making a longer sentence more likely. Therefore, she considered the four-year sentence offered by the State, encompassing the Petitioner's felony and misdemeanor convictions, to be the Petitioner's best option. Counsel stated that the Petitioner was frustrated because a three-year sentence could not be negotiated. Counsel was also frustrated by her unsuccessful attempts to secure a shorter

sentence during plea negotiations, but she felt it was in the Petitioner's best interest to enter guilty pleas and accept the four-year total sentence.

Counsel acknowledged that she and the Petitioner discussed his participation in a drug court program. Counsel knew the Petitioner spoke with administrators of the program. She opined that the administrators may not have followed through with an evaluation because of the Petitioner's lengthy record, which included some assault convictions.

Counsel said that after the Petitioner was released on bond following his July guilty plea hearing, she told him to "stay in touch." However, the Petitioner never made any appointments or came to see counsel at her office. Regardless, they had several telephone conversations. During a conversation on or around August 31, 2007, counsel relayed the State's four-year offer, and the Petitioner indicated his desire to accept it. Counsel said that she did not have any letters from the Petitioner in her case file.

At the conclusion of the hearing, the post-conviction court accredited the testimony of trial counsel, finding that counsel advised the Petitioner that he was eligible for release after serving thirty percent of his sentence but that his release was not guaranteed. The post-conviction court noted that the audiotaped conversation between the Petitioner and his mother was "extremely damaging" and that the Petitioner would likely have received an eight and one-half year sentence if he had proceeded to trial. The court noted that when the Petitioner pled guilty to the misdemeanors, the court did not repeat the detailed explanation of the Petitioner's rights. However, the court noted that "the fact that they all run concurrently with each other and then all [run] concurrently with the four years . . . kind of corrects itself or becomes moot." The court found that the Petitioner knew what he was doing when he entered all of his guilty pleas and that counsel was "wise" to recommend that the Petitioner plead guilty. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

The Petitioner maintains that the post-conviction court erred in finding that his trial counsel was effective and that his guilty pleas were knowingly and voluntarily entered. To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony,

and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

## A. Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Petitioner argues that trial counsel failed to explain to him the length of the sentence he was facing and the parole board's requirements for release. The Petitioner maintains that due to this failure, he pled guilty under the mistaken impression that he would serve only fifteen months in confinement. He further asserts that trial counsel did not advise him that his convictions could be used to enhance his punishment in subsequent proceedings. Finally, the Petitioner maintains that counsel met with him infrequently, failed to properly interview witnesses, and failed to prepare a defense against his misdemeanor charges.

The post-conviction court found that counsel fully informed the Petitioner that he was eligible for, not entitled to, release after serving thirty percent of his sentence in confinement. Additionally, the court found credible counsel's testimony that she informed the Petitioner about the parole board. The Petitioner's felony guilty plea hearing reflects that the Petitioner was fully informed about the consequences of his guilty plea, including the use of the conviction to enhance punishment for future convictions. Moreover, the Petitioner did not introduce any proof regarding the benefit of further meetings or investigation regarding the misdemeanor charges. The post-conviction court found that trial counsel was effective. There is nothing in the record to preponderate against this finding. Accordingly, the Petitioner is not entitled to relief on this issue.

## B. Knowing and Voluntary Guilty Pleas

The Petitioner contends that his guilty pleas to the felony and misdemeanor charges were not knowingly or voluntarily entered. In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. Id.; see also Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. Hicks, 983 S.W.2d at 246 (citing Boykin v. Alabama, 395 U.S. 238, 244 (1969)); see also Mackey, 553 S.W.2d at 341. To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The Petitioner contends that he did not realize that he might have to serve more than 30 percent of his sentence in confinement and that if he had been made aware of the possibility he would have insisted on going to trial. However, the record belies this contention. The Petitioner initially entered open guilty pleas, informing the trial court that he was aware he could receive a sentence between three and six years. At the sentencing hearing, the Petitioner agreed to plead guilty to outstanding misdemeanor charges and accepted the State's recommendation of a total effective sentence of four years. Counsel testified that she told the Petitioner that he was only eligible for, not entitled to, release after serving thirty percent of his four-year sentence. Accordingly, there is nothing in the record to suggest that confusion, if any, regarding a four-year sentence played a pivotal role in the Petitioner's decision to plead guilty.

The Petitioner further contends that when he entered his misdemeanor pleas, the trial court did not inform him on the record of his rights or of the consequences of his pleas. The Petitioner maintains that if he had been properly informed, he would not have pled guilty and would have insisted on going to trial. The post-conviction court stated that it had "somewhat of a problem with the misdemeanor pleas because obviously all the rights that were available were not gone over at that time." However, the court found that the Petitioner suffered no prejudice by the court's failure to reiterate his rights at the time of the misdemeanor pleas. While the better practice, of course, would have been to review with the Petitioner the entire panoply of his rights, the record supports the post-conviction court's finding that the Petitioner suffered no prejudice by the trial court's failure to do so. The Petitioner has a long history of entering misdemeanor pleas, demonstrating his familiarity with the plea process. Moreover, the Petitioner had been informed of his rights during the felony guilty plea proceedings. See State v. Neal, 810 S.W.2d 131, 139 (Tenn. 1991) (stating that a trial court's error in failing to review a defendant's rights during a guilty plea proceeding is harmless "[i]f it can be shown that the defendant already knew what he was not advised"), overruled in part on other grounds by Blankenship v. State, 858 S.W.2d 897, 902 (Tenn. 1993); see also Dwight A. Mayton v. State, No. 01C01-0708-CC-00376, 1998 WL 749413, at *3 (Tenn. Crim. App. at Nashville, Oct. 28, 1998). Accordingly, the record does not preponderate against the post-conviction court's ruling.

## III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE